Case number 20-1726 AWGI LLC et al. versus Atlas Trucking Company LLC et al. Arguments not to exceed 15 minutes per side. Mr. Susser, you may proceed for the appellant. Thank you. May it please the court. Stephen Susser on behalf of Appellants, Atlas Trucking Company, Atlas Logistics Company, and Eaton Steel Company. The trial court made a clear error in determining who came first in using Atlas Logistics as a trademark in commerce. In doing that, it ignored AWGI's statements to the trademark office that it first used the mark on December 3, 2012. The trial court also ignored the testimony from Atlas Logistics Company's founder that Eaton Steel had been using Atlas Logistics in commerce since 2005. Mr. Susser, so far this seems like an argument that the district court should have credited your evidence rather than that of your adversary. Of course, we review factual findings to determine whether they're clearly erroneous. So, if you could recast your argument in that light, it might be a little more helpful. Well, Your Honor, that's just the problem. It was not a situation where the court looked at our testimony and compared it to someone else's testimony. The testimony of the founder was unrebutted. The court just ignored it. There was nothing in the court's decision to credit that statement. It's as if it did not exist. And I think if not counting or not even crediting the statement of the founder of Atlas Logistics as to when his company began using Atlas Logistics in commerce, sworn testimony that was not challenged, to not even consider that I do believe is clear error. And that's why it's not really judging one testimony versus the other. Mr. Susser, your suggestion that it was ignored by the district court comes from what leads you to say ignore. Is it that the court in its judgment and decision never mentioned it? Is that the grounds for saying it was ignored? Yes, Your Honor. And so the court ends in the final analysis, the court gives a rationale for choosing to credit Atlas Bandlines, I'll call it shorthand, right? And that rationale was what? Why do you think that's inconsistent? That rationale that the court did employ is somehow inconsistent with the idea that the court never actually mentioned the other? I believe it is in the sense that the trial court credited a 2007 brochure that AWGI introduced, but there was no evidence that that brochure had ever been used in commerce. In other words, had left the premises of AWGI and no evidence that... And that wouldn't be a reasonable inference? That wouldn't be a reasonable inference to be understood by the district court? Did you have a brochure? No? Possibly, Your Honor. It might be... If it is a reasonable inference, then does that not explain the court's decision to go with your competitor? I don't know. In fact, I don't think so, Your Honor, because there was no testimony that had been used continuously in commerce as it must. So even if it was used in 2007, it had to have been used continuously. But the evidence did come in, Your Honor, that AWGI had been using other entities for its logistic services like Titan Global Distribution, AWGI... But these entities were just other names, weren't they? For what we'll call the consolidated company, they ended up using... I don't know. I thought that maybe I read that, that there was a consolidation of under the new name AW... Right? There was a consolidation, correct, Your Honor, in 2013, approximately, under Atlas Logistics. That's exactly... And in fact, that's really our point, is that before then, AWGI had never offered itself, presented itself to the public as a logistics company through the word Atlas or even Atlas Logistics. When it was touting itself for logistics, it used other names like Titan, Specialized Transportation Group, AWG Logistics, but never Atlas or Atlas Logistics. And so not only was it not using Atlas Logistics before 2013 to market to the public its logistics services, it was actually using other names affirmatively for logistics. And we, from 2005 onward, as a testimony and the two invoices to customers from 2005, I believe show, continuously were using an Atlas Logistics LLC, is our entity name, to market the logistics arm of Eaton Steel. So when you have that evidence, the testimony of the founder... And by the way, their brochure did not have any testimony to support it. None of the witnesses was even in the marketing department of AWGI to actually talk about, this is how this brochure was created. This is how it was sent out. This is to whom it went. We got none of that, but we did have on our side, the owner saying, yeah, I founded this company in 2003. It began doing work in 2005 with customers. And here are two invoices that show that from 2005. Mr. Susser, I'm a little, I'm a little confused about the shape of the argument here, because I thought that the district court found that your competitor, AWGI, owned a mark, had a mark in Atlas as attached to a whole bunch of things in the transportation industry. So Atlas, as applied to transportation things, belongs to your competitor, is what the district court found. And if that's true, then I'm not sure why we need to worry about who first used Atlas Logistics. If they first used Atlas in, I think, 1947, and you don't contest that, and the district court found, and that extends to all kinds of transportation uses, then it doesn't matter whether, does it? Whether Atlas Logistics, whether you first used that in 2005 or 2007, because that first question takes care of it all. That's what your opponent says. Why is that not true? Well, and I actually agree, Your Honor. I mean, if indeed, AWGI can establish that it was using the word Atlas as a common law mark, it wasn't a registered mark then, but as a common law mark in the 40s or the 70s or whatever it said, it said both, for logistics to identify to the public that is a supplier of logistics in the transportation industry, then we lose. I mean, we lose. But to find that, one would have to find that from the 40s or the 70s, AWGI was actually communicating to the public Atlas Logistics or Atlas as a source for logistics, and that just hadn't been done. Again, not only had it not been done through the word Atlas or through the word Atlas Logistics, but they were presenting their logistics through other companies like Specialized Transportation Group. What about the argument, counsel, that logistics in long-distance trucking to move, let's say, the really basic, to move household goods, that logistics, you almost can't do it without logistics. That got more sophisticated over time, undoubtedly. But you have routes, you have over-the-road drivers. There are what supports the trucking, the moving of the goods would be called the modern term logistics, right? If you own Atlas, I think that's Judge Larson's point, if the company owned and used in commerce Atlas, then is logistics not go along for the ride, so to speak? I don't think so, Your Honor. And I'll tell you why. I mean, I use logistics to get onto this call this afternoon. I mean, logistics is a very broad term, but companies are, so within moving, there is logistics, getting your kids ready for school but what we're talking about is a company that's presenting itself as a transportation broker, as opposed to actually having the trucks to move. So if I don't have the right truck, I can use my logistics arm to find the right truck and basically be a matchmaker. That's how it was being used primarily. And for that use, it just hadn't been done by it through the term Atlas Logistics until 2013 by AWGI. But that was precisely what we were doing and what the invoices that we presented show. Those invoices were actually to other trucking companies to match them to loads that needed to be sent. We were doing that as early as September, 2005. So it really, it's the identification by the customer of the name Atlas Logistics or Atlas with that logistics service. And that just didn't exist for AWGI before 2013 when it made a concerted effort to create a new brand. All right, Mr. Susser, you'll have your rebuttal time. Thank you. Mr. Gabrielides, tell me how it's pronounced. Mr. Gabrielides, thank you for the effort and you're not alone. May it please the court, I'm here with my colleagues Genevieve Charlton and Valerie Galassini. I want to answer some specific questions that each of you raised, Your Honors. First, Judges Gibbons and Cook, I think you began with the standard of review. The appellants are in fact asking that this court reweigh all the evidence. The brief that appellants filed is full of words that the court overlooked evidence, declined to rely on it, ignored it. They have the stronger evidence. Their evidence is more persuasive and these are verbatim quotes. We had a trial, that's what the trial was for. The district court made a detailed finding after seven days with 200 and some odd money's effective conclusions. There is not a clear error in there. What the appellants are complaining about is that their evidence should have been given more weight. The district court did that. Well, to be fair, Mr. Gabrielides, am I saying it right? It's a beautiful name. To be fair, for the court to fail to acknowledge slash mention slash, you know, that's the argument. What is this court to make of the fact that it doesn't appear in the analysis of the district court? Well, this particular evidence, that's the argument as I get it. I understand your honor, but we've yet to hear what that evidence is. We've yet to hear appellants say this was the evidence presented to trial and it's nowhere considered in the district court's opinion. There's no identification that the trial record contains evidence X with a site to the record and yet the district court's opinion is barren of that evidence. We've not seen it. I don't think that that isn't appearing in the brief either. That is an explicit pointing to, because I thought counsel did give us, point us to in his argument here. I gave him credit for it, so help me. As we read the brief, your honor, we could not find a single instance where the appellant was saying here was some evidence that we presented to the district court. And yet it doesn't find its way into the opinion. I'm sorry. I thought it was the testimony of the CEO, CEO, whatever. Yeah. Mr. Susser says that the testimony of the CEO or the COO was not credited. So he was the person he was involved. He testified that their company used Atlas Logistics first. And that Mr. Susser says is nowhere in the district court's opinion. I believe it is your honor. I mean, it's saying that it didn't credit it. That's one thing. In other words, that's just a credibility determination if I may. Right. Paragraph 237 and 238 refer to Mr. Goodman's testimony that we believe Mr. Susser is saying the district court should have given more credit. So this is in the maker's mark case that your honors decided. There was a similar argument. The appellant said, hey, the district ignored it. Here's what this court said. The district court did consider the evidence at issue in that case, but rejected that evidence as limited and unconvincing. And this was a trademark case. And so there's a difference between ignoring it as if it never entered the record and considering it, putting it in your opinion, but simply finding that it's not as trial number two. And the standard review is doesn't allow for that. It's clear error. I'd also like to also just not by way of a question, but the invoices that Mr. Susser referenced or discussed it well from paragraph 231, at least through paragraph 235, which you mentioned. So this is not a case where the district court somehow, you know, blinded its eyes to some evidence and got the result it wanted by ignoring it. The district court weighed every piece of evidence that was in front of the record, came to a conclusion based on its weighing. And right now, the only way that the defendant, that the appellant can get around that is to explain where there's clear error in those findings. And we haven't heard it. I would also like to pick up Judge Larson's point because it's actually case dispositive. And that is the whole issue of priority and the invoices and the brochure are moot. Once, if the court affirms the finding of infringement, which depends on the most straightforward and traditional trademark claim there is. Our client uses Atlas and it has used it for decades and it has used it for transportation services and it has used it for logistics services. I am not talking about Atlas Logistics. I'm talking about Atlas. Those rights developed over decades are strong enough and close enough to the mark that the defendants use Atlas Logistics. And the logistics part of it does in fact add nothing of distinction to it. In fact, another one of this court's cases explains why. In the CFE case, the mark there was BMF, the plaintiff's mark, and the defendant's mark was BMF wheels for wheels. And this court said, wheels isn't going to get you a point of distinction. It's a generic component that doesn't distinguish for the consumers any difference between BMF and BMF wheels. This is the same. If the defendants are saying, if the appellants are saying rather, that their use of logistics somehow transforms their mark into a mark that avoids confusion, that violates this court's CME, CFE case, but also think about it from the consumer standpoint. Why would a consumer think that Atlas Logistics for logistics creates any different consumer impression from Atlas, which has been used for time immemorial? This case is about Atlas versus Atlas Logistics. If the court affirms on that ground, and we believe it should, then everything, I'm sorry, I think I misspoke, Atlas versus Atlas, because the defendants also use Atlas alone. If the court affirms on that infringement ground, there are no other issues, period. The entire case. And how broad is your claim to ownership of the mark? So I mean, it's a little bit nebulous, right? So you, surely you own Atlas van lines, Atlas has applied to van lines. I don't even think your opponent questions whether you own Atlas as applied to trucking. They do dispute Atlas as applied to logistics. What if you, what if there were like a travel agency? I don't even know if those exist anymore, but Atlas travel agency. I mean, that's travel, it's moving things like how Atlas Air, could I start Atlas? How much do you own? How do we know that it's the van lines and the trucking, but then also the logistic services? How do we know that logistic services are in there? And what you owe? I think, I think for one thing, your honor, the court need not find that line because this falls well within the traditional trademark 101 law. I mean, we are talking about a company that has operated transportation, logistic services, my client, and another company that operates transportation and logistics services, just as the words, sometimes logistics, but the marks are identical. So we need not find the outer limits. But I will say, for instance, if somebody opened Atlas shoe store, my client clearly would not have any rights where, where, where the continuum draws the dividing line. I don't know, because one thing this court and almost every other circuit court has said, trademark cases are fact intensive. We can't just create a principle that says, you know, quantitatively, this is where the rights end, but the court need not make that decision. But this case presents the clearest brick and mortar case we can think of. It's Atlas versus Atlas and transportation logistics. And is that because your client provided logistics services from sort of day one or from early on? Because like, what if you also offered, you will now want to move into shoes. And there's somebody out there who's offered shoes, or airline Atlas Air. Your opponent would say no, no, we did the logistics first, they they're, they're now moving into logistics. We did the logistics first, so they can't have it with respect to logistics. Okay. The answer to that, Your Honor, I'm getting it. Oh, certainly, certainly. But trademark law is a straitjacket in that respect. In other words, a company that begins using its mark on transportation services is not limited in that it has a zone of expansion. In other words, the public could reasonably come to believe that the same company that uses Atlas for transportation services has branched out into logistics, because they're so related to one another. And the law says, as long as there's some reasonable relationship that would allow a reasonably prudent consumer to think there's a relationship, that's where the rights can extend to. Would shoes be in that zone? Absolutely not. Absolutely. So the issue is... Atlas Air, maybe, but we don't need to decide because your argument is logistics is close enough to trucking and van lines that we own it all. I think your opponent would say, no, it's not. This is the same as if you were at the courthouse. I don't think we own it all. Our rights are strong enough. There's only three on a panel. To capture... Unless somebody hates what was done and says, hey, we need everybody to decide this, and bank. Hey, Debbie. You were hearing me. I'm sorry. I'm sorry. My sister showed up and I talked to her about what we're seeing. She needs to know the Sixth Circuit. Sorry. Thank you. So everything that all these questions that your honors have raised about the similarity of the logistics creates a different mark. That's exactly what we tried. That's exactly what Judge Cox put in his opinion. And that is exactly what the appellants are now asking you to find. They have the better evidence. And both as a matter of the legality of the standard of review and the fact of what actually the trial record contains and how these companies operate in the marketplace. The likelihood of confusion, there's no clear error on the findings. And it fits well within standard trademark law. You don't have to push the bounds of it in any way. If we look at all the first factors, we can do all of them. The two most important being strength of the mark and the similarities. I'm sorry. And also the relationship of the services. We can start stop right there and find enough. And once the court finds that the likelihood of confusion finding is proper, there is no issue on priority. That becomes moot. So I'm happy to answer any questions that this panel may have on that or any other issue, but I have a couple minutes left. Do we have anything further? I don't. Thank you. If you have nothing further, there's no room. You can't stop early. I will stop early. Okay, Mr. Sasser. Thank you, Your Honor. If Atlas is the same as Atlas Logistics, then why did AWGI separately file trademark registrations for Atlas alone for household moving and freight forwarding, which we acknowledge they have, that's their bailiwick, and separately file several years later for Atlas Logistics as a separate mark. It's because there are different marks that can exist. We're not talking about Starbucks coffee, where you can say Starbucks and it implies or includes coffee. Saying Atlas doesn't mean anything. Even their own experts said it means a book of maps or a strong person, a strong demigod, or titan, maybe. But it doesn't, on its own, doesn't mean anything. And it certainly doesn't mean a company called AWGI or any of the various entities of AWGI, some of which don't need that. Mr. Sasser, doesn't it have commercial value? That's the whole reason, isn't it? The fact is that it has commercial value, the name, right? And therefore, maybe it was an extra step that the company, I don't know whether they got wind of some other uses of Atlas Logistics, perhaps by you, but they, as a defensive move, is that not an explanation enough, rather than to undermine, it's like band-aids or suspenders and a belt? Well, Your Honor, Atlas, as used in Atlas Van Lines, certainly has a connotation for the moving industry, definitely. But I think it's important to realize there's a government database, online database, accessible to all, that courts can take judicial notice of, called SAFER, S-A-F-E-R. As of yesterday, there were 491 active companies that had Atlas in their name within the transportation industry. If AWGI owns the word Atlas, all those companies are subject to stop using United because it owns United in the transportation industry. It's a weak word. Maybe, but that's a little bit of a, I mean, maybe, but that's a little bit of a stretch, right? So, what it does mean is maybe United Van Lines can tell United Trucking that they can't use that anymore, right? I think Mr. Gabriel Lide's argument, I probably got that name wrong, but I tried, is that those things, logistics and trucking and van lines are so inherently related that a consumer would think, and that's what the district court found, that they were part of the same market, whereas maybe the airline and the van line are sufficiently different that nobody would be confused. And the fact is, with 400 companies using it, they picked you. So, I mean, action is against your company for infringement. They didn't choose 300 others, right? But they just... Or maybe they have, we don't know. We don't know, but we have to concern ourselves with your claim. Certainly, they did. And we were the so-called fortunate one to be chosen. But as far as Atlas, including Atlas Logistics as a name, the evidence shows at trial that AWGI went out of its way to create a new brand for Atlas Logistics. It wanted to separate itself. It had a new website, a new company name, new employees. It wanted to distinguish Atlas Logistics from Atlas that had gone before it. It wanted to get out of the van lines business and into logistics more. That's why it changed the brand, and there was no continuity toward the public with those names. All right. We thank you both for your argument, and we'll consider the case carefully.